HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOSEPH FANGSRUD VON ESCH, and
RENNY FANGSRUD VON ESCH

Plaintiffs,

v.

LEGACY SALMON CREEK
HOSPITAL, et al.,

Defendants.

CASE NO. C16-5842RBL

ORDER

[Dkt. #s 18, 20, 24, 36, and 37]

THIS MATTER is before the Court on the following motions: Plaintiff Fangsrud von Esch's Motion for Summary Judgment [Dkt. #18]; Defendant Legacy Salmon Creek Hospital's Motion for Summary Judgment [Dkt. #20]; Defendant Asset System's Motion for Summary Judgment [Dkt. #24]; Fangsrud von Esch's Motion for Leave to File Deposition Transcripts with Exhibits [Dkt. #36]; and Fangsrud von Esch's Motion to Amend his complaint to assert an outrage claim [Dkt. #37].

In July 2013, Renny Fangsrud von Esch[1] had a baby at Legacy. Her insurer, Kaiser, initially refused to pay some or all of her $16,904.46 bill. She appealed this denial. Meanwhile,

---
[1] Joseph and Renny Fangsrud von Esch are the plaintiffs, but Renny was the admitted patient who incurred the disputed bill. This Order will use the singular for clarity.

ORDER - 1

Legacy continued to bill her the full amount. In December, Kaiser relented and agreed to pay the bill, minus a $400 co-pay, or "member responsibility."

Kaiser paid Legacy a large lump sum, or "batch payment" (some $485,000), to pay a number of patients' bills. But the batch payment was $4931.51 less than it should have been, and, for reasons that remain unclear, the entire shortage fell on Fangsrud von Esch's account. As a result, while Kaiser and Fangsrud von Esch agreed she owed only $400, Legacy's accounting system "thought" she owed $5,331.51. Legacy continued to bill Fangsrud von Esch this amount, plus accruing interest at the Washington statutory rate, 12%. Each bill invited her to call a toll free number if she had questions. She did not, and she apparently did not pay the $400 she agreed she owed. She claims she assumed the bill would be corrected. Legacy also called to discuss the outstanding balance but was unable to contact Mrs. (or Mr.) Fangsrud von Esch.

In May 2014, Legacy assigned the Fangsrud von Esch account Defendant Asset Systems, a debt collector it has often used. Asset promptly notified Fangsrud von Esch about the debt. For reasons that are not explained, however, not much happened for a long time. Even Fangsrud von Esch's own attorney references only two letters that Asset sent to Fangsrud von Esch: one on January 12, 2016, and one on June 9, 2016.

Legacy claims that it did not hear from Fangsrud von Esch until January 2016, when she called Legacy to complain that the account had been erroneously sent to collections and that Kaiser was responsible for the payment. Fangsrud von Esch also called Asset to dispute the bill several times in early 2016. In March, Fangsrud von Esch paid Asset $100. In July, she sent a letter disputing the amount of the debt that Asset was seeking to collect, as to both principal and interest.

Legacy and Asset concede that the accounting error was not resolved for some time (partly due to Kaiser's short batch payment and erroneous "explanation of benefits," partly because of Legacy's accounting error, and partly because Fangsrud von Esch ignored the erroneous billings until well after the account was sent to collections).

The Kaiser/Legacy/Fangsrud von Esch accounting discrepancy was resolved in August 2016. Legacy recalled Fangsrud von Esch's debt from Asset, refunded the $100 to Fangsrud von Esch, "wrote off" the unpaid $400 co-payment, and apologized.

Fangsrud von Esch sued. She asserts claims under the federal Fair Debt Collection Procedures Act (FDCPA) and Washington' Consumer Protection (CPA) and related Collection Agency (CAA) Acts. She seeks actual and consequential damages, emotional distress damages, treble damages, costs and attorneys' fees, and a variety of injunctive relief. Fangsrud von Esch also seeks to amend her complaint to assert a state law "outrage" tort claim against Legacy.

Fangsrud von Esch seeks partial summary judgment on her FDCPA claim against Asset, arguing that the FDCPA imposes strict liability where a debt collector uses "false, deceptive, or misleading means" to collect a debt. She claims that because she did not actually owe the money Asset sought, its efforts to collect that debt by claiming she *did* owe it were "false" as a matter of law.

In response, Asset also seeks[2] summary judgment, on the FDCPA claim and on the CPA and WCC claims. It argues it had a right to rely on the accuracy of the account that Legacy sent to it, because Asset and Legacy had a 30 year, thousands of accounts, working relationship, and Legacy documented its accounts. It claims its collection efforts were the result of a bona fide

---

[2] Asset also asks the Court to strike Fangsrud von Esch's attorney's declaration(s) [Dkt. #s 18-1 and 30-1] because he does not allege he has (and plainly does not have) personal knowledge of the factual assertions he makes in it. It asks the Court to deny Fangsrud von Esch's motion because there is no factual support for it. Those Motions are DENIED.

error. Asset also argues that Fangsrud von Esch's CPA and CAA claims fail because she cannot establish that she was actually damaged by its actions.

Legacy also seeks summary judgment on Fangsrud von Esch's[3] CPA and CAA claims against it. It argues that, as a heavily regulated health care provider, it is exempted from CPA liability, and that Fangsrud von Esch cannot establish a CPA claim in any event: the billing was a *mistake*, not a lie or deception, and Fangsrud von Esch has not shown she was damaged in any event. It argues that the CPA was not intended to provide a windfall to every consumer who suffers the inconvenience of a billing error.

**A. Summary Judgment Standard**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. At 251-52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial.

---

[3] Fangsrud von Esch does not assert an FDCPA claim against Legacy, presumably because it is not a debt collector.

*Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24.

**B. FDCPA**

The FDCPA prohibits the use of false or deceptive means to collect even a legitimate debt: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," such as making a "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e-(5). The test for determining whether a debt collector violated the FDCPA is objective, and does not depend on whether the debt collector intended to deceive or mislead the consumer. *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006). Instead, the "least sophisticated" debtor standard applies, and the liability analysis turns on whether a debt collector's communication would mislead an unsophisticated but reasonable consumer. *Id.* Debt collectors are strictly liable for violations of the FDCPA. *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010).

Nevertheless, Asset argues that a debt collector is entitled to rely on information provided by a creditor who has provided accurate information in the past. It argues that the FDCPA does not impose on the debt collector any duty to independently investigate the claims presented to it, and, as a result, it is entitled to a bona fide error defense: essentially, if the billing error was an honest mistake, it is not liable. *See Clark, supra*, at 1176: "Pursuant to § 1692k(c)'s bona fide error defense, a debt collector is not liable for its violations the FDCPA if the 'violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.'"

Fangsrud von Esch argues that the affirmative[4] bona fide error defense does not apply as a matter of law. That defense is available only if the debt collector represented to the consumer that it owed an amount that was the same as the amount on the creditor's report. *See* §1692k(c). Fangsrud von Esch's primary argument is that the defense is not available to Asset because it represented to her that she owed an amount different (and larger) than the "amount shown on Legacy's report": it added 12% per year in prejudgment interest to the debt amount. By the time Asset's letters were sent to Fangsrud von Esch, the interest amounted to almost $1800. Fangsrud von Esch claims that a medical bill is not a liquidated amount, and that adding it was itself a violation.

Fangsrud von Esch also argues that the bona fide error defense requires a defendant to prove that its reliance on the creditor's accounting was reasonable, and that it maintained reasonable procedures to avoid errors. Finally, Fangsrud von Esch argues that the "error" was not a mistake, but was instead an intentional act to attempt to force plaintiffs to pay other patients' debts: it was a purposeful fabrication. But this argument is aimed at Legacy, not Asset.

Adding interest at the statutory rate to what is a liquidated sum is not "seeking to collect an amount different than that reported by the creditor." If the amount is liquidated—and the amount at issue[5] surely was, even if it was the result of an error—the debt is subject to pre-judgment interest. RCW 19.52.010. None of Fangsrud von Esch's various filings or extensive footnotes include a citation for the proposition that a debt collector claiming prejudgment interest on a liquidated sum has violated the FDCPA by seeking to collect a different amount than was

---

[4] Fangsrud von Esch also claims that Asset "failed to properly plead" the bona fide error affirmative defense, but that defense is pled in Asset's Answer. Dkt. # 6, p. 7, line 22.

[5] Fangsrud von Esch seems to suggest that Asset failed to accrue interest on the $400 co-payment that she had not paid, and that seeking to collect *less* instead of more than would otherwise be due is itself a violation of the FDCPA. There is no support for this claim.

reported by the creditor. If it were, every debt collector seeking to collect interest on an actual, accurate, liquidated sum would be violating the FDCPA. That would be news to them and to this Court. Adding pre-judgement interest to what appeared (from the creditor) to be a liquidated sum does not deprive the collection agency of the right to assert §1692k(c)'s bona fide error defense.

Nor does the FDCPA impose on the debt collector an obligation to independently investigate the claims the creditor presents. *Clark*, *supra*, at 1162. Instead, it applies where the debt collector establishes that the violation was not intentional and that it resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. *Id*.at 11176.

Fangsrud von Esch argues that Asset had a chance to establish facts supporting such a defense, and failed. But demonstrating, as Asset did, that it relied on Legacy's 30 year history of sending to it thousands of accurate, documented accounts establishes that its reliance on the creditor was reasonable. Claiming that the creditor intentionally falsified the debt, even if true, does not negate the fact that Asset relied on Legacy's past performance in accepting and seeking to collect the debt.

Legacy documented the debt it assigned to Asset in this case[6]. It is not clear what more Asset could or should be required to demonstrate to show that it reasonably relied on Legacy in accepting assignment of, and seeking to collect on, the debt. Adding adjectives like "fake" "intentional" "scheme" and "outrageous" to the description of these facts does not alter the conclusion that Asset's collection efforts were the result of a bona fide error.

---

[6] At least as to the second of the two collection letters Asset sent to Fangsrud von Esch. And at the time it sent the first, Fangsrud von Esch concedes she not dispute any of the bills that Legacy had sent to her.

1    Fangsrud von Esch's Motion for partial summary judgment on Asset's violation of the
2    FDCPA is DENIED. Asset's Motion for Summary Judgment on Fangsrud von Esch's FDCPA
3    claim is GRANTED, and the FDCPA claim is DISMISSED with prejudice.

**C. CPA and CCA**

To prevail on a Washington CPA claim, a plaintiff must establish five elements: (1) an unfair or deceptive act or practice, (2) that occurs in trade or commerce, (3) a public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act and the injury suffered. *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wash. 2d 59, 73, 170 P.3d 10 (2007). If the plaintiff cannot establish all five elements, her CPA claim must be dismissed. *Id. See also . Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.* 105 Wn.2d 778, 785, 719 P.2d 531 (1986), *citing* RCW 19.86.010(2).

Asset and Legacy both seek summary judgment on Fangsrud von Esch's CPA (and similar CAA) claims, arguing that she has not and cannot establish the required element of injury, or damage. *See Roger E. Girard et al. v Michael H. Myers et al.*, 39 Wash, App., 577 (1985). They claim, correctly, that emotional distress damages are not available under this claim, and the stress or emotional distress associated with being wrongly billed is not alone enough to establish this element of the claim. Nor, they claim, does either statute provide for statutory damages in the absence of actual damages. Finally they claim that Fangsrud von Esch's reliance on her $100 partial payment is not "damage"; she admittedly owed a $400 co-payment at the time she made it.

Fangsrud von Esch argues that actual money damages are not required, but instead that she must only show "injury"—which can be minimal. She argues that she spent[7] time on this issue that could have been productively spent elsewhere, incurred postage, parking, gas, and cellular charges, and hired an attorney to assist in getting to the bottom of the dispute. She claims such losses suffice under *Panag v. Farmers Ins. Co.*, 166 Wn.2d 27, 55 (2009):

> [D]amages for mental distress, embarrassment, and inconvenience are not recoverable under the CPA. However, the injury requirement is met upon proof the plaintiff's property interest or money is diminished because of the unlawful conduct, even if the expenses caused by the statutory violation are minimal. . . . Pecuniary losses occasioned by inconvenience may be recoverable as actual damages.

*Panag v. Farmers Ins. Co.*, 166 Wn.2d at 57-58.

Asset's response on this point is not entirely clear. It corrects the *Panag* pin cite, but does not actually dispute that inconvenience injuries (as opposed to emotional injuries) can constitute injury. It does, however, argue persuasively that it engaged in any deceptive conduct. It also points out that Fangsrud von Esch's interrogatory response articulated her damages, and that she should not be permitted to now claim she suffered something more:

> 20. What is the nature and extent of any damages which you claim as a result of the alleged actions of Asset as set forth in your Complaint?
>
> ANSWER: Plaintiffs paid Asset $100.00 for a debt that was paid in full. Plaintiffs are entitled to $100.00, plus treble damages of $300.00, plus statutory damages of $1,000.00, plus costs and attorney's fees from Asset.

[Dkt. # 26]

---

[7] Fangsrud von Esch moves the Court for permission to file supplemental deposition transcripts [Dkt. #36]. She specifically seeks to add her own deposition transcript, which she claims establishes her "injury."

That motion is GRANTED. However, the supplementation does not address the Defendants' core objection to Fangsrud von Esch's evidentiary basis for her motion or her responses to the defendants' motions: she has not filed a declaration asserting the facts upon which she relies.

1         The payment of $100 toward a $7000 debt is not "damage" or injury when the plaintiff concedes she owed $400. Nor has Fangsrud von Esch established that Asset did anything unfair or deceptive in an effort to collect the debt. It is certainly true that the debt was not actually owed, but she knew that, and was not deceived. She argues—but provides no evidence—that Asset threatened to sue her if she did not pay, but the basis for that claim is Legacy's own "note" reflecting that Fangsrud von Esch told Legacy that. There is no evidence Asset told *her* that. And it is far from clear that that would itself be a violation of the CPA in the context of attempts to collect a bill that was, as discussed above, the result of a bona fide error.

        Asset's Motion for Summary Judgment on Fangsrud von Esch's CPA (and CCA) claims against is GRANTED and those claims are DISMISSED with prejudice.

        Legacy relies on the same argument—lack of actual damages—and the same lack of evidence supporting the argument that some sufficient, minimal amount of damage suffices. It also argues that, as a heavily regulated hospital, it is exempt from additional, "strict" CPA liability for its conduct under RCW 19.86.170. And it argues that, despite plaintiffs' vehement and repeated claims of some intentional billing conspiracy, this case involves a billing error that the plaintiffs could have helped solved well before it got to collection, and well before it became a federal case. It argues there is nothing deceptive or unfair in its conduct as a matter of law.

        The Court agrees with these claims, as well. Fangsrud von Esch has not established and cannot establish the elements of a CPA or CCA claim against Legacy, as a matter of law. Legacy's Motion for summary Judgment on Plaintiff's claims against is GRANTED and those claims are DISMISSED with prejudice.

**D. Motion to Amend.**

Fangsrud von Esch seeks to amend her complaint to assert an outrage claim against Legacy, based on its "fake" invoice, and its attempts to collect on it.

Leave to amend a complaint under Fed. R. Civ. P. 15(a) "shall be freely given when justice so requires." *Carvalho v. Equifax Info. Services, LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)). This policy is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted). In determining whether to grant leave under Rule 15, courts consider five factors: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (emphasis added). Among these factors, prejudice to the opposing party carries the greatest weight. *Eminence Capital,* 316 F.3d at 1052.

A proposed amendment is futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Gaskill v. Travelers Ins. Co.*, No. 11-cv-05847-RJB, 2012 WL 1605221, at *2 (W.D. Wash. May 8, 2012) (citing *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1393 (9th Cir.1997)).

To prevail on a claim for the tort of outrage, also known as intentional infliction of emotional distress, a plaintiff must prove that (1) the defendant engaged in extreme and outrageous conduct, (2) the defendant intentionally or recklessly inflicted emotional distress on the plaintiff, and (3) the conduct actually resulted in severe emotional distress to the plaintiff. *Kloepfel v. Bokor*, 149 Wash.2d 192, 195, 66 P.3d 630 (2003). "Any claim of outrage must be predicated on behavior 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community." *Sutton v Tacoma School District No. 10*, 180 Wash.App. 859, 324 P.3d 763 (2014) (internal citations omitted) (emphasis added).

Fangsrud von Esch claims that Legacy's intentional decision to apply Kaiser's payment to other patients' accounts, and to over-bill her and send the fake debt to collection was outrageous and conscience shocking.

Legacy argues that amendment would be futile because a billing mistake is not "outrageous" in the meaning of the tort, and there are no cases so holding. It argues that it would be prejudiced by a late amendment to assert this claim, emphasizing that discovery is closed[8]. It suggests that the delay in asserting the claim is unexplained, and that it was strategically "shielded" until after she was deposed. It points out that the only evidence anyone threatened to sue is Fangsrud von Esch's own complaint, to Legacy, that Asset was going to sue her, when she called Legacy after they had sent the account to Asset for collection—the first time she responded to the repeated billings she claims she knew were wrong, for two years.

The Court agrees. The proposed amendment is futile and prejudicially late. The Motion to Amend is DENIED.

The case is DISMISSED and closed. The Court will not entertain a motion for costs or fees. IT IS SO ORDERED.

Dated this 10th day of August, 2017.

Ronald B. Leighton
United States District Judge

---

[8] In response to Assets discovery, Fangsrud von Esch denied any emotional distress.