1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

8

JOSEPH and RENNY FANGSRUD
VON ESCH,

Plaintiffs,

v.

ASSET SYSTEMS, INC., an Oregon
Corporation d/b/a in Washington as
ASSET SYSTEMS, pursuant to
Washington UBI No. 601474356,

Defendant.

NO.  3:16-cv-05842-BHS

**PLAINTIFFS' SUPPLEMENTAL
BRIEFING RE: DEFENDANT'S 28
U.S.C. § 1927 MOTION FOR FEES
AND COSTS**

9
10
11
12
13
14
15

16      PLAINTIFFS, through counsel, respectfully submit the following Supplemental

17   Briefing. Plaintiffs respectfully request that this Court consider the one-day late filing due to

18   counsels' excusable neglect.

19
20                          I.      INTRODUCTION

21      Plaintiffs are just one family out of millions in America who have faced issues of

22   "surprise medical debt." Plaintiffs' case prompted Defendant to audit **2,500** other patient

23   medical collection files, which the hospital then discharged. And, lawmakers recognize that

24   medical billing and collection have serious problems, and have been working to reform how

25   medical debt is collected and credit reported. This was not a frivolous case.

26
PLAINTIFFS' SUPPLEMENTAL BRIEFING                     1
NO.  3:16-cv-05842-BHS

**Robert Mitchell, Attorney at Law, PLLC**
700 W. Evergreen Blvd. | Vancouver, WA 98660
Ph (360) 993-5000 | Fax (888) 840-6003
bobmitchelllaw@gmail.com

## II.  ARGUMENT

1.  **This Litigation Worked to Protect Thousands of Consumers.**

A.   **Defendant's Executive Director Admits 2,500 Accounts were "Written Off" as a Result of this Lawsuit**.

This case was the catalyst to protect 2,500 other patients. In response to a line of questioning concerning the number of bad accounts at issue in this case, and the actions she took to correct the problem, Mary Emerton, Defendant's Executive Director stated:

> When I became aware … **I looked for every account that Legacy had placed with us between 2013 and 2014 that could have been similarly situated**. And I personally caused more than **2500 accounts** to be placed on hold while Legacy reviewed the issue that they had, in terms of that issue with the contract…So I wanted to protect all of the consumers that may have been similarly in the same situation. So we put those accounts on hold. **And, ultimately, Legacy wrote off all of those accounts**.

*See* Mitchell declaration, **EXHIBIT 1**, Trial Transcript, Day 1, pp. 154 – 155, lines 25:23. Emphasis added.

Regarding the admission that 2,500 accounts were written off, Mary Emerton was asked: "**And it was plaintiffs' lawsuit that caused you to do that; wasn't it?**" *See id.* at pp. 155 – 156, lines 24 – 25.  Emphasis added.

To this question, Mary Emerton responded:

> No. **Well, I suppose the plaintiffs' lawsuit caused Legacy to share what they thought the problem was. And when they shared what they thought the problem was, I took the best effort that I could to protect the consumers that may be in the same situation**. I don't believe –

*Id.* at p. 156, lines 1 – 5.  Emphasis added.

**Robert Mitchell, Attorney at Law, PLLC**
700 W. Evergreen Blvd. | Vancouver, WA 98660
Ph (360) 993-5000 | Fax (888) 840-6003
bobmitchelllaw@gmail.com

It is undisputed that this case involved a collection letter Defendant mailed to Plaintiffs, demanding over $7,000.00, which Plaintiffs did not owe.  If the balance of Plaintiffs' account is even remotely comparable to the balance of the other 2,500 accounts that were discharged as a direct result of Plaintiffs filing this lawsuit, then Plaintiffs' lawsuit provided relief to consumers in the seven-figure to eight-figure range.

**B.**     **On Appeal, Defendant's Own Attorney Admitted that Plaintiffs Sought *Reasonable* Relief**.

It is undisputed that this case involved at least one *admitted* violation of a strict liability remedial statute that must be liberally construed to protect Plaintiffs.  15 U.S.C. § 1692 *et seq*. Defendant admitted mailing a collection letter demanding thousands of dollars Plaintiffs simply did not owe.  The only question to be answered at trial was related to the statute's single affirmative defense; the Bona Fide Error defense.  15 U.S.C. § 1692k(c).  In that regard, the trial hinged on whether Defendant could affirmatively prove the maintenance of procedures reasonably adapted to avoid the specific admitted statutory violations at issue in this case.  *Id*.

In general, Plaintiffs alleged that Defendant should have done more to investigate the account, including obtaining an Explanation of Benefits ("EOB") from Defendant's creditor client ("Legacy Salmon Creek Hospital"), before mailing the offending letter and taking other collection actions.  Regarding this issue, at oral argument before the Ninth Circuit Court of Appeals, the Honorable Justice Fletcher posed the following question to defense counsel, Jeffrey Hasson: "**So the question is, cited by the other side, why is it not a reasonable procedure in that circumstance, to ask for the EOB**?"  During the with Justice Fletcher that followed, defense counsel stated in pertinent part:

PLAINTIFFS' SUPPLEMENTAL BRIEFING               3
NO.  3:16-cv-05842-BHS

**Robert Mitchell, Attorney at Law, PLLC**
700 W. Evergreen Blvd. | Vancouver, WA 98660
Ph (360) 993-5000 | Fax (888) 840-6003
bobmitchellaw@gmail.com

**That's one of the procedures they could have implemented. They didn't in this case.  So, I can't just say that that's it. The question though is not whether or not the EOB was the right procedure to have in place, because clearly in this case, if they had requested the EOB, it would have stopped back in January of 2016.  I can't dispute that**…

*See Joseph Fangsrud von Esch v. Asset, et al*., Ninth Circuit Court of Appeals No. 19-35825, Audio of Oral Argument, minutes to 13:27 - 17:11, at: https://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000017614.

It is undisputed that *all* of the statutory violations Plaintiffs alleged in this case occurred *after* January of 2016.  Therefore, by defense counsel's own admissions to the Court of Appeals, the procedure Plaintiffs suggested was not only reasonable, but would have also prevented all of the statutory violations that occurred in this case.

The Ninth Circuit Panel that heard the first appeal in this case scheduled the matter for oral argument the second time around.  It is hard to conceive that the Ninth Circuit Court of Appeals would hear oral argument twice in a frivolous lawsuit lacking any public importance.

**2.   This Issue of Surprise Medical Debt Is Not Frivolous.**

State and Federal lawmakers worked hard to reform medical billing and medical debt collections and credit reporting during the pendency of this litigation. The Washington State Legislature amended Washington's Collection Agency Act to afford additional protections to consumers similar to Plaintiffs. *See* Mitchell decl., **EX. 2**, RCW 19.16.250(28) and (29); Medical Debt—Collection, 2019 c 227, 66th Washington State Legislature (2019).

Also, during the pendency of this litigation, the Washington State Attorney General entered into a consent decree with St. Joseph's Hospital in Tacoma, in a case involving surprise medical debt, erroneous medical billing, and medical debt collection.  **EX. 3**.

**Robert Mitchell, Attorney at Law, PLLC**
700 W. Evergreen Blvd. | Vancouver, WA 98660
Ph (360) 993-5000 | Fax (888) 840-6003
bobmitchellaw@gmail.com

In September of 2017, the three major credit reporting agencies changed their procedures to wait 180 days before reporting medical debts. *See,* https://www.myfico.com/credit-education/blog/medical-collections-removed. In 2019, the U.S. Congress considered legislation to require the credit reporting agencies to wait one year before reporting medical debt: Medical Debt Relief Act of 2019, S. 1581, 116th Cong. (2019 – 2020).

The U.S. Congress has also considered legislation to stop "surprise medical debts" -- Stopping the Outrageous Practice of Surprise Medical Bills Act of 2019, S.B. 1531, 116th Cong. (2019 – 2020).  One can reasonably anticipate that, following the COVID-19 pandemic, this issue will be revisited.

Also during the pendency of this litigation, there were many, many lawsuits filed against hospitals for fraudulent debt collection. One example is: Methodist *Le Bonheur* Healthcare recently wrote off 8,300 debt collection lawsuits in Shelby County, TN. Mitchell decl., **EX. 4**.  That case is just one of many similar actions taking place throughout the country.

Additionally, both parties to the appeal filed National Amicus briefs, recognizing the importance of these issues. A frivolous lawsuit would not garner Amicus support.

3. <u>**Defendant Should Not be Awarded Fees or Costs.**</u>

Given the above realities (and many more that were not included for purposes of brevity), it is difficult to imagine how Defendant could ask this Court to declare Defendant the substantially prevailing party for purposes of awarding costs.  It is even more difficult to imagine how Defendant could justify overwhelming this Court with hundreds of pages of briefing and documents in support of the theory that Plaintiffs violated 28 U.S.C. § 1927.

**Robert Mitchell, Attorney at Law, PLLC**
700 W. Evergreen Blvd. | Vancouver, WA 98660
Ph (360) 993-5000 | Fax (888) 840-6003
bobmitchelllaw@gmail.com

1    Stated simply, Defendant <u>admitted</u> its statutory violation.  The Ninth Circuit endorsed a

2    jury trial.  The only question was whether Defendant could meet its affirmative defense of

3    establishing reasonable procedures.  During trial, Defendant finally admitted that this lawsuit

4    saved 2,500 other consumers what likely amounts to millions of dollars.  Despite these

5    admissions, the Trial Court concluded as a matter of law that Defendant's procedures were

6    reasonable.  Then, on the second appeal, which the Ninth Circuit scheduled for the second oral

7    argument, defense counsel admitted that Plaintiffs' position throughout this litigation was

8    reasonable.  *See Supra.*:  "…**clearly in this case, if they had requested the EOB, it would**

9    **have stopped back in January of 2016.  I can't dispute that**…"

10   The underlying statute contains a one-way fee-shifting provision that only inures to the

11   benefit of a successful plaintiff.  Therefore, despite the above realities, to offset the cost of the

12   choice Defendant made to vigorously defend theses <u>admitted</u> statutory violations, Defendant

13   seeks to color this case as frivolous and deserving of 28 U.S.C. § 1927 sanctions.  Given the

14   above realities, nothing could be further from the truth.

### III.   CONCLUSION

For the reasons stated above, this Court should deny Defendant's requested relief.

DATED THIS 14<u>th</u> day of January, 2021.

 s//Robert Mitchell
ROBERT MITCHELL (WSBA #37444)
ROBERT MITCHELL, ATTORNEY AT LAW, PLLC
700 W. Evergreen Blvd.
Vancouver, WA  98660
Telephone:  360-993-5000
Email:        bobmitchellaw@gmail.com

*Attorneys for Plaintiffs, Fangsrud von Esch*

PLAINTIFFS' SUPPLEMENTAL BRIEFING          6
NO.  3:16-cv-05842-BHS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the <u>14</u>th day of January, 2021, the foregoing was filed via the Court's CM/ECF system, which will automatically serve and send email notification of such filing to all registered attorneys of record.

DATED THIS <u>14</u>th day of January, 2021, at Memphis, Tennessee.

s//Robert Mitchell
ROBERT MITCHELL (WSBA #37444)
ROBERT MITCHELL, ATTORNEY AT LAW, PLLC
700 W. Evergreen Blvd.
Vancouver, WA  98660
Telephone:   360-993-5000
Email:         bobmitchellaw@gmail.com

*Attorneys for Plaintiffs, Fangsrud von Esch*

**Robert Mitchell, Attorney at Law, PLLC**
700 W. Evergreen Blvd. | Vancouver, WA 98660
Ph (360) 993-5000 | Fax (888) 840-6003
bobmitchellaw@gmail.com